## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **SYDNEY BROXTON,** | |
| Plaintiff, | |
| v. | Civil Action No. 5:21-cv-00035 |
| **WESLEYAN COLLEGE,** | |
| Defendant. | |

## <u>AMENDED COMPLAINT FOR DAMAGES</u>

COMES NOW Plaintiff Sydney Broxton ("Ms. Broxton") and with the written consent of Defendant Wesleyan College ("Wesleyan") (Doc. 12) hereby amends the title to, and other otherwise amends her Complaint for Damages, to name and identify Sydney Broxton, rather than Jane Doe, as the Plaintiff in this action.

### <u>The Parties</u>

1.

Ms. Broxton is a citizen of the State of Georgia and the United States.

2.

Ms. Broxton is a white female. At the time of events at issue in this action, she was nursing student at Wesleyan. Ms. Broxton began her studies at Wesleyan in January 2019 and completed them in December 2020.

3.

Wesleyan is a private, liberal arts women's college in Macon, Georgia. It was founded in 1836.

4.

Wesleyan is a Georgia nonprofit corporation that maintains its registered office and is deemed to reside in Bibb County, Georgia.

## **Jurisdiction**

5.

This Honorable Court has original jurisdiction because this is a civil action arising under the laws of the United States. 28 U.S.C. § 1331; 42 U.S.C. § 1981.

6.

As this is a civil action of which this Honorable Court has original jurisdiction, it also has supplemental jurisdiction over all claims that are not within its original jurisdiction as those claims are so related to the claims in the action which are in such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

## Venue

7.

Venue is proper in the Middle District of Georgia because Wesleyan is deemed to reside in the Middle District of Georgia and is deemed to be a resident of Georgia, the State in which Middle District of Georgia is located.

8.

Venue is also proper in the Middle District of Georgia because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Middle District of Georgia.

## Facts

### The Racial Makeup of Wesleyan's Student Body

9.

When Wesleyan was founded, its student body was entirely white.

10.

Wesleyan did not admit a black student until 1965 and no black student graduated from Wesleyan until 1972.

11.

As of the Fall of 2018, most of Wesleyan's students were members of racial or ethnic minority groups according to the National Center for Education Statistics. Blacks comprise the largest minority group, 31.7% of the student body.

## **Wesleyan's History of Racism**

### 12.

Wesleyan's history includes decades of overt racism.  Wesleyan's founding president was a slaveholder and defender of the pro-slavery Methodist movement in the South.  In the 1840 census, the college household listed the resident faculty, their families, more than one hundred students, and four enslaved black people. Wesleyan's records indicate that during the antebellum period the administration engaged in the practice of "hiring out" enslaved people owned by other people to work at Wesleyan.

### 13.

After emancipation and throughout Reconstruction and the Jim Crow era, Wesleyan continued using blacks to keep Wesleyan running. Yearbook photos, wage ledgers, and student scrapbooks provide glimpses of blacks, often referred to as "domestic staff" and "black servants" who kept the facilities clean, prepared students' food, did the laundry, and served as porters, gardeners, and maintenance staff.

### 14.

Wesleyan had links to the Ku Klux Klan for decades.  Its class names in 1909, 1913, and 1917 were the Ku Klux Klan.  Wesleyan's 1913 yearbook is named the "Ku Klux."  A sketch of a masked rider on a horseback is on the title

page.  The 1910 yearbook contains a sketch of a female figure in a white hood and robe holding a burning cross.

15.

For years, Wesleyan identified with the Klan through class names and used extreme hazing rituals and traditions that carried forward into the late 20th century, often involving racist symbolism such as nooses, hooded costumes, blackface, and figures hung in effigy.

16.

The Klan name in the early 1920s was replaced with the Tri-Ks, which later morphed into the Tri-K Pirates — a name that carried forward every four years through the early 1990s when the class name was changed to the Red Pirates. Other class names created after the Klan moniker included the Green Knights, the Purple Knights, and the Golden Hearts.  For nearly a century, each new incoming class adopted one of the four names on a rotating basis.

17.

Wesleyan did not abolish its use of the Red Pirates, the Green Knights, the Purple Knights, and the Golden Hearts as class names until August 2018.  This was shortly after classes at Wesleyan were canceled after racist graffiti appeared on dorm walls. Someone wrote the "N-word" in black marker and targeted an international student with offensive language.  That incident led to calls for

change.  After the incident, black students and other minorities called for a more

active voice on campus.

## Wesleyan Apologizes and Promises to Make Amends

### 18.

Acknowledging its "sin of slavery," in June 2017, Wesleyan apologized for

its racist history.  Its apology included the following:

> Our history includes parts that are deeply troubling, and we are not
> proud of them … Wesleyan's people were products of a society
> steeped in racism, classism, and sexism.  They did appalling things –
> like students treating some African Americans who worked on
> campus like mascots, or deciding to name one of their classes after the
> hate-espousing Ku Klux Klan, or developing rituals for initiating new
> students that today remind us of the Klan's terrorism.

### 19.

Shortly after Wesleyan apologized for its racist history, Wesleyan's

President, Dr. Vivia L. Fowler ("Dr. Fowler") made the following statement: "We

are working to learn about and understand our history and to make amends."

## A Time of Racial Unrest

### 20.

On May 25, 2020, George Floyd, a black man, died during an arrest in

Minneapolis, Minnesota, after Derek Chauvin, a white Minneapolis Police

Department officer, knelt on Mr. Floyd's neck for over eight minutes as three other

officers looked on.

21.

Mr. Floyd's death set off a period of racial unrest like this country had never seen. Protests and demonstrations promoting "Black Lives Matter" and denouncing "white privilege" took place across the country. In many cases, the protests and demonstrations escalated into riots, looting, and street skirmishes with police. At least 200 cities in the U.S. had imposed curfews by June 3, 2020 while at least 30 states and the District of Columbia activated National Guard troops due the mass unrest.

22.

In response to the widespread racial unrest that besieged our country, Dr. Fowler posted the following message on Wesleyan's Facebook page on June 1, 2020:

> As president of Wesleyan College, I write to express my sadness and anger at repeated cases of racial injustice in our country, including the recent deaths of George Floyd and Ahmaud Arbery. Along with the Wesleyan administration, I call for Wesleyan College's continued commitment to battling the scourge of racism in our academic community, in our local community, and in the global community. As we prepare to reunite as a campus, we must remind ourselves that one of our four guiding principles is inclusion. We believe all voices are important, and we gain strength from and celebrate the many ways we can learn from one another. Another guiding principle is connection. We believe we gain strength from our connections to each other. Members of our campus community throughout the world have suffered from the evils of racism. Those of us who have not directly experienced racism must listen with open hearts and minds. Our work of racial healing continues, and it is a shared responsibility.

**The Incident Involving Ms. Broxton**

**June 3, 2020**

23.

On June 3, 2020, J.A. tweeted the following:

While we at it:
Sydney Broxton goofy ass racist af but out here trying to be a nurse….
she made jokes about illegal immigrants and blocked those who called
her out.

24.

Replying to J.A.'s tweet, B.S. tweeted an image depicting Ms. Broxton with
the words "Bear down on these [N-word]s" printed on it (the "Bear Down Image").

25.

The Bear Down Image was created in 2013.  B.S. tweeted it as early as
November 26, 2013.

26.

While Ms. Broxton is depicted in the Bear Down Image, she did not create it
and she was not involved in its creation.  Nor did Ms. Broxton cause any of the
words that are printed on the Bear Down Image (including, but not limited to, the
"N-word") to be printed on it.  Additionally, Ms. Broxton never posted or
otherwise transmitted the Bear Down Image (with or without any words printed on
it) on any social media.  Ms. Broxton did not even know that the Bear Down Image

existed until June 3, 2020 when one of her friends told her that it was being displayed on social media.

27.

Upon receipt of the Bear Down Image from B.S., J.A. tweeted, "Oh b[***]h. I'm about to write an email."

28.

B.I.P. replied to J.A.'s tweet by tweeting, "Maybe we can block that degree before she even gets out there sweetie!!  Where does she study?"

29.

In response to B.I.P.'s tweet, J.A. tweeted Ms. Broxton's Facebook profile which showed that Ms. Broxton is a student at Wesleyan.

30.

J.B. then tweeted, "If anyone has anymore screenshots feel free to send them my way!  Me and a few friends are typing an email as we speak[.]"

### The Images and Information about Ms. Broxton
### Are Delivered to Wesleyan and Go Viral

31.

On June 3, 2020 or June 4, 2020, the Bear Down Image, an image depicting Ms. Broxton wearing a Border Patrol shirt (the "First Border Patrol Image") and information showing that Ms. Broxton was the female depicted in the images were delivered to Wesleyan.

32.

The Bear Down Image, the First Border Patrol Image, and information that identified Ms. Broxton as the female depicted in the images were also delivered to countless others by social media on June 3, 2020 and June 4, 2020.  The images and the information went viral.

**June 4, 2020**

33.

On June 4, 2020, Wesleyan was bombarded with negative, racist comments about Ms. Broxton and demands that action be taken against Ms. Broxton because of her race.  For example, Wesleyan received the following comments from L.L. in a social media exchange Wesleyan had with her.

> L.L.:      What else is worse than a white officer in power with a badge and the authority to use deadly force?  A white doctor or nurse who have the ability to show lack of empathy, skill and f[***]s given to let go of the lives of black people.  Everyday, black people are neglected in the healthcare system for acts of racism and discrimination without probable cause.  I've recently discovered a young Wesleyan student well on her way to become just that.  I've commented on their official page and my next step is whatever it takes.  I'm being extreme because I'm SICK of this s[**]t.  Hello, Sydney.  *in my I Know what you Did Last Summer voice.*[1]

---

[1] L.L. is a black female.  The Bear Down Image, the First Border Patrol Image, and information identifying Ms. Broxton as the female depicted in the images accompanied this comment.

Wesleyan:     Thank you for bringing your concerns to our attention. We will be reach out to you privately to learn more about the situation.

L.L:          Her name is [Ms. Broxton].  Since my life doesn't matter to her, hers doesn't matter to me.  I'm moving to extreme measures to expose her.  Thank you for your time.

L.L.:         Well, I don't know her personally so that won't be necessary unless you're sending a thank you and we've exonerated *(sic)* her from the program.   The same program that my friend is currently in and will be graduating the same day as Sydney the bigot.   I look forward to your follow up that she won't be a licensed professional in this state.  Thank you again.

34.

The comments Wesleyan received about Ms. Broxton also included the following:

- RACIST ALERT

  This is Sydney Braxton, nursing student at @WeslyanCollege. She does NOT need to be in the health profession working with minority communities with this type of attitude and rhetoric.  She needs to be REMOVED from this nursing program immediately![2]

- [S]he needs to be kicked out of school because she is dangerous[.] [O]ne day she will be taking care of black people and she has hate in her heart towards blacks.

- WOWWWWWWW.   Y'all getting exposed now, [I] love it. EVERYONE MEET [MS. BROXTON], a racist soon to be a nurse from Wesleyan College – First for Women.  Wouldn't trust her for one moment with my life!  And the college asked their students to

---

[2] This comment was made by a black female.  The Bear Down Image accompanied this comment.

refrain from racists/hate posts.  Why?  So they can remain at your school" I think if not.

- Are U Serious ???!!!!!!!To Say or Release A Freedom of Expression Policy to Justify her actions Is MindBlowing And That Means your apart of the problem as well! We All have Freedoms but we have to be conscious and held accountable for racist slurs that can damage one's reputation, character, and name! What More of An Investigation Do U Need! Just Like U Saw The Cops Kneeling on #GeorgeFloyd Neck, Racist Sydney posted a very derogatory statement on social media calling Black Americans "N[-word]s"! If u allow her to be apart of your Alma Mater Then that means you are a part of the problem and lack of swift action is complicit!

- I feel very sorry for any minority who goes to this school.  A girl by the name of [Ms. Broxton] chose to show her racist colors on social media and the schools response after going on a tangent about the coronavirus, is to ask their students to refrain from social media posts engaging in "name calling and hateful or racist comments.

   They're asking their racist students to hide the fact that they are racist.  Pathetic.

- Hi, Wesleyan.  Thank you so much for reflecting on black lives mattering and showing you're with us but all of the pending nurses you're currently behind are not for us and I'm requesting for immediate separation from the program and institution.  She's displayed intolerable and insufferable behavior and she's gotta go. Period.[3]

---

[3] This comment was made by a black female.  The Bear Down Image, the First Border Patrol Image, and information identifying Ms. Broxton as the female depicted in the images accompanied this communication.

- I am appalled that this could be my nurse one day!  This is unacceptable.  She is a student at Wesleyan College[4]

35.

Wesleyan also received threatening comments and comments about its racist history:

- Y'all gotta look into the history of Wesleyan itself.  Been racist!!

- Man Wesleyan been racist from the beginning[.] [M]an this ain't the first time this has happened there.

- [T]his is very disturbing and unacceptable period!  Racism will not be tolerated in Macon and anywhere, anymore!  This policy needs to be changed because we are not going away!  A spotlight will be shined on this institution until we see change.

36.

The comments Wesleyan received also include those made by J.B. and Q.H.[5] in a social media exchange they had with Wesleyan:

J.B.:          F*** Wesleyan.  Next protest needs to be there.

Q.H.         [J.B.] telling ya

Wesleyan:  Our administration is aware of the issue.  Please contact us directly through DM or email.

J.B.:          Nope.  Sydney Broxton didn't dm or email her racism.

---

[4] This comment was made by a black female.  The Bear Down Image, the First Border Patrol Image, and information identifying Ms. Broxton as the female depicted in the images accompanied this communication.
[5] J.B. and Q.H. are black males.

Q.H.        [J.B.] right she expressed it publicly so we shall do the same with her racist comments.

### **Wesleyan Expels Ms. Broxton**

37.

On June 4, 2020 at 12:20 p.m., Wesleyan Dean of Students Christy Henry ("Dean Henry") orally notified Ms. Broxton by phone that Wesleyan was investigating her because of posts Wesleyan had received from Ms. Broxton's social media accounts.

38.

On June 4, 2020, at 12:25 p.m., Dr. Fowler posted the following on Wesleyan's Facebook site:

Dear Wesleyan Community:

We are living in a strange time.  Here at Wesleyan, it's calm and peaceful – but it's also void of human activity, except a few staff who come to work each day, rotating days with their office mates.  When not attending essential duties, we remained sheltered in the relative security of our homes, hoping to avoid contact with the coronavirus. But all around us, in the news and on social media we are witnessing the daily escalation of racial tensions around the world.  We are feeling that escalation at Wesleyan too, and we are responding quickly and decisively.

First, as our Freedom of Expression policy says, we "condemn all instances of intolerant speech or conduct."   We will abide by our policies related to intimidation, bullying, and appropriate use of social media.

Second, and very importantly, we urge members of the Wesleyan community to resist using social media to engage in name-calling and

hateful or racist comments. We will take swift and decisive action if we discover that students, faculty, or staff have engaged in overtly racist and hate-filled behavior – up to and including suspension and expulsion of students and suspension and termination of faculty and staff.

We have a long way to go in our search for peace and equity – here in our little corner of the world and throughout the world. My prayer is that we, the Wesleyan community, will seek to be instruments of peace and will model for others an equitable community.

Dr. Vivia L. Fowler

39.

On June 4, 2020, at 3:51 p.m. (which is less than 3½ hours after Dean Henry orally notified Ms. Broxton that Wesleyan was investigating her), Dean Henry orally notified Ms. Broxton by phone that she had been expelled from Wesleyan effective immediately.

40.

On June 4, 2020, at 4:59 p.m. (before it had given Ms. Broxton written notice that she had been expelled), Wesleyan published the following on its Facebook, Twitter, and Instagram sites:

Today Wesleyan administrators learned of racist statements and photos posted on a Wesleyan student's social media. Those posts are abhorrent to us and a gross violation of Wesleyan's mission and values. Such views have no place on our campus or within our community and we will act decisively when confronted by them. As soon as we were made aware of this information, we launched an investigation that led to the expulsion of the student, effective immediately. Wesleyan will not tolerate racist behavior in any form.

41.

On June 4, 2020, at 6:46 p.m., Ms. Broxton received written notice from

Dean Henry that stated the following:

> Based on posts that we have received from your social media accounts
> that are in violation of the Wesleyan College Freedom of Expression
> Policy, Social Media Policy and Honor Code you have been expelled
> from Wesleyan College immediately.[6]

42.

Wesleyan did not investigate whether Ms. Broxton made the posts on her

social media she was accused of making.  Wesleyan did not even question Ms.

Broxton about the matter.

---

[6] In addition to the "Bear Down Image" and the "First Border Patrol Image," two other images that were termed "Documentation of social media posts" were enclosed with Dean Henry's letter.  One was another image of Ms. Broxton wearing a Border Patrol shirt (the "Second Border Patrol Image").  Like the First Border Patrol Image, Ms. Broxton transmitted the Second Border Patrol Image on social media once in November 2017 – more than one year before she became a Wesleyan student.  The other image that was enclosed with Dean Henry's letter is a social media post that appears to be made by a black man named Michael Dozier. Ms. Broxton shared Mr. Dozier's post with others on social media (the "First Dozier Image").  The "First Dozier Image" that Dean Henry gave Ms. Broxton as "Documentation of social media posts" does not contain the entirety of Mr. Dozier's post or the entirety of the post that Ms. Broxton shared with other on social media.  Mr. Dozier's post ended with the question, "Which black lives matter?"    When Ms. Broxton shared Mr. Dozier's post with others on social media, she added that same question to her post to emphasize the point it appeared Mr. Dozier was trying to make – like the lives of other blacks, the life of a retired black police chief who is trying to protect a store that is being looted amid chants of "black lives matter" also matters.

43.

Ms. Broxton has not made any posts on any of her social media accounts in violation of the Wesleyan College Freedom of Expression Policy, Social Media Policy or Honor Code.  Specifically, Ms. Broxton never posted the Bear Down Image on any of her social media accounts, Ms. Broxton posted the Border Patrol Images (which are not in violation of the Wesleyan College Freedom of Expression Policy, Social Media Policy or Honor Code) once on a social media account more than one (1) year before she became a student at Wesleyan, and the Dozier Images are not in violation of the Wesleyan College Freedom of Expression Policy, Social Media Policy or Honor Code.

## **Wesleyan's Contract with Ms. Broxton**

44.

Since becoming a Wesleyan student, Ms. Broxton has been in a contractual relationship with Wesleyan.

45.

While Ms. Broxton has been a student at Wesleyan, the *Wesleyanne* has been Wesleyan's student handbook.

46.

The terms of the contract between Ms. Broxton and Wesleyan include statements provided in the *Wesleyanne*.

47.

The procedures to be followed for expelling students for alleged infractions of Wesleyan's policies and Honor Code are set forth in the *Wesleyanne* and constitute terms of the contract between Ms. Broxton and Wesleyan.

48.

According the *Wesleyanne*, except for certain specified policies and procedures, Wesleyan's Dean of Students is required to conduct a hearing before a student is expelled for a violation of a Wesleyan policy or procedure.

49.

According to Dean Henry's letter, Wesleyan expelled Ms. Broxton for violating the "Freedom of Expression Policy" and the "Social Media Policy." The *Wesleyanne* does not specify violations of the Freedom of Expression Policy or the Social Media Policy as matters that are not to be heard by the Dean of Students before a student is expelled.

50.

The *Wesleyanne* also provides that all alleged violations of the Honor Code will be heard by the Honor Council. Further, it provides that a student who has been accused of an Honor Code violation (a) will have the case heard by the Honor Council without undue delay, and (b) will receive written notice of the charges and the procedures that are to be followed before the Honor Council hearing.

51.

Wesleyan did not comply with the procedures for expelling students for alleged infractions of Wesleyan's policies and Honor Code that are set forth in the *Wesleyanne* and that constitute terms of the contract between Ms. Broxton and Wesleyan before it expelled Ms. Broxton.  Specifically,

- Wesleyan failed to have its Dean of Students conduct a hearing of any alleged violation of Freedom of Expression Policy, the Social Media Policy, or any other policy by Ms. Broxton before Ms. Broxton was expelled,

- Wesleyan failed to give Ms. Broxton written notice of the charges against her or the procedures that were to be followed before Wesleyan expelled her, and

- Wesleyan failed to have its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her.

### **Ms. Broxton's Appeal of the Expulsion Decision**

52.

The *Wesleyanne* provides that a Wesleyan student who has been expelled may appeal the expulsion decision.  Dean Henry's June 4, 2020 letter to Ms. Broxton provided that Ms. Broxton could appeal the decision to the Student-Faculty Judicial Board within five (5) business days of notification of the expulsion by submitting the appeal to Dionne George who was identified in Dean Henry's letter as Wesleyan's Chief Judicial Affairs Officer.

53.

Ms. Broxton appealed the expulsion decision by submitting a written appeal to Ms. George on June 10, 2020 which is three (3) business days of notification of the expulsion.

54.

Ms. George acknowledged receipt of Ms. Broxton's appeal on June 11, 2020.  When she did so, Ms. George told Ms. Broxton that she would be contacted by Ms. George within the next 7-10 business days regarding hearing proceedings.

55.

Wesleyan scheduled a hearing of Ms. Broxton's appeal only after Ms. Broxton filed a suit against Wesleyan in the Superior Court of Bibb County on June 29, 2020 and the Court scheduled a hearing for Ms. Broxton's request for an interlocutory injunction.

56.

Ms. Broxton's appeal of the expulsion decision was heard by Wesleyan's Student-Faculty Judicial Board on July 10, 2020.

57.

After hearing the matter, the Student-Faculty Judicial Board **REVERSED** the decision to expel Ms. Broxton from Wesleyan.

## **Wesleyan's Motive and Causation**

58.

As demonstrated by

- Ms. Broxton's race (white),

- the dates the images that Ms. Broxton allegedly posted on her social media were posted;

- the content of the images that Ms. Broxton allegedly posted on her social media,

- the changes in the racial makeup of Wesleyan's student body,

- Wesleyan's 2017 promise to make amends for its racial history and its "sin of slavery,"

- the racial unrest that besieged our nation at the time Wesleyan expelled Ms. Broxton,

- Wesleyan's commitment to battle the "scourge of racism" just three days before its expulsion of Ms. Broxton,

- the negative, racist comments about Ms. Broxton Wesleyan was bombarded with on June 4, 2020 along with the demands that action be taken against Ms. Broxton because of her race,

- the threatening comments Wesleyan received on June 4, 2020 if it did not take action against Ms. Broxton along with the comments about its racist history that Wesleyan received,

- Wesleyan's decision to expel Ms. Broxton just 3½ hours after Dean Henry orally notified Ms. Broxton that she was under investigation without conducting any investigation or even questioning Ms. Broxton,

- Wesleyan's failure to abide by the procedures for expelling students for alleged infractions of Wesleyan's policies and Honor Code that are set forth in *Wesleyanne* and that constitute terms of the contract between Ms. Broxton and Wesleyan,

- Wesleyan's publication of the libelous statement that Ms. Broxton had posted racist statements and photos on her social media,

- Wesleyan's public disclosure of the private fact that Ms. Broxton had been expelled for allegedly posting racist statements and photos on her social media and other private facts,

- Ms. Broxton having to file suit in the Superior Court of Bibb County before Wesleyan would have its Student-Faculty Judicial Board hear Ms. Broxton's appeal of the decision to expel her,

- the Student-Faculty Judicial Board's **REVERSAL** of the decision to expel Ms. Broxton, and

- all other facts and circumstances surrounding this case,

Wesleyan, because of Ms. Broxton's race, intentionally expelled Ms. Broxton, intentionally failed to perform its obligations under the terms of its contract with Ms. Broxton, and intentionally denied Ms. Broxton the enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

59.

But for Ms. Broxton's race, Wesleyan would not have expelled Ms. Broxton, would have performed its obligations under the terms of its contract with Ms.

Broxton, and would not have denied Ms. Broxton the enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

## Causes of Action

## A. Breach of Contract

60.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-59 above.

61.

Wesleyan breached its contract with Ms. Broxton by failing to have its Dean of Students conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Freedom of Expression Policy Social Media Policy before Ms. Broxton was expelled.

62.

Wesleyan breached its contract with Ms. Broxton by not giving Ms. Broxton written notice of the charges against her or the procedures that were to be followed before Wesleyan expelled her.

63.

Wesleyan breached its contract with Ms. Broxton by not having its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her.

64.

Wesleyan breached its contract with Ms. Broxton by expelling Ms. Broxton.

65.

Ms. Broxton has experienced losses because of Wesleyan's breaches of its contract with Ms. Broxton described in the paragraphs 61-64 above.   Ms. Broxton's losses include, but are not limited to, the amount that has been paid to have her reputation repaired by reason of Wesleyan's breaches of its contract and the amount that has been paid for legal representation in having the expulsion reversed.

66.

Ms. Broxton's damages for the breaches of contract described in paragraphs 61-64 are such as arise naturally and according to the usual course of things from such breaches and such as the parties contemplated, when the contract was made, as the probable result of its breach.

67.

Because of Wesleyan's breaches of contract described in paragraphs 61-64 above, Ms. Broxton is entitled to recover from Wesleyan that amount that will fully compensate her for the losses which a fulfillment of the contract would have prevented or the breach of it entailed. Ms. Broxton is, so far as it is possible to do

so by a monetary award, to be placed in the position she would have been in had Wesleyan fully performed its contract with Ms. Broxton.

## B. Violations of 42 U.S.C. § 1981

68.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-67 above.

69.

Wesleyan, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, intentionally failed to have its Dean of Students conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Freedom of Expression Policy Social Media Policy before Wesleyan expelled Ms. Broxton.

70.

But for Ms. Broxton's race, Wesleyan would have had its Dean of Students conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Freedom of Expression Policy Social Media Policy before Wesleyan expelled Ms. Broxton.

71.

By not having its Dean of Students conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Freedom of Expression Policy Social Media Policy before Wesleyan expelled Ms. Broxton, Wesleyan purposefully

discriminated against Ms. Broxton on the basis of race with respect to the performance of its contract with Ms. Broxton and Ms. Broxton's enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

72.

Wesleyan violated 42 U.S.C. § 1981 by intentionally failing to, because of Ms. Broxton's race, have its Dean of Students conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Freedom of Expression Policy and Social Media Policy before Wesleyan expelled Ms. Broxton.

73.

Wesleyan, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, intentionally failed to give Ms. Broxton written notice of the charges against her and the procedures that were to be followed before Wesleyan expelled her.

74.

But for Ms. Broxton's race, Wesleyan would have given Ms. Broxton written notice of the charges against her and the procedures that were to be followed before Wesleyan expelled her.

75.

By not giving Ms. Broxton written notice of the charges against her and the procedures that were to be followed before Wesleyan expelled her in breach of its contract with Ms. Broxton, Wesleyan purposefully discriminated against Ms. Broxton on the basis of race with respect to the performance of its contract with Ms. Broxton and Ms. Broxton's enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

76.

Wesleyan violated 42 U.S.C. § 1981 by intentionally failing, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, to give Ms. Broxton written notice of the charges against her and the procedures that were to be followed before Wesleyan expelled her.

77.

Wesleyan, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, intentionally failed to have its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her.

78.

But for Ms. Broxton's race, Wesleyan would have had its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her.

79.

By not having its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her in breach of its contract with Ms. Broxton, Wesleyan purposefully discriminated against Ms. Broxton on the basis of race with respect to the performance of its contract with Ms. Broxton and Ms. Broxton's enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

80.

Wesleyan violated 42 U.S.C. § 1981 by intentionally failing, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, to have its Honor Council conduct a hearing regarding Ms. Broxton's alleged violation of Wesleyan's Honor Code before Wesleyan expelled her.

81.

Wesleyan, because of Ms. Broxton's race and in breach of its contract with Ms. Broxton, intentionally expelled Ms. Broxton.

82.

But for Ms. Broxton's race, Wesleyan would not have expelled Ms. Broxton.

83.

By expelling Ms. Broxton, Wesleyan purposefully discriminated against her on the basis of race with respect to the performance of its contract with Ms. Broxton and Ms. Broxton's enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship with Wesleyan.

84.

Wesleyan violated 42 U.S.C. § 1981 by intentionally expelling Ms. Broxton because of Ms. Broxton's race and in breach of its contract with Ms. Broxton.

85.

Ms. Broxton has been injured and will be injured in the future by Wesleyan's violations of 42 U.S.C. § 1981.  She has suffered monetary losses and will suffer monetary losses in the future. She has experienced, and will experience in the future, embarrassment, humiliation, mental anguish, and emotional distress. Also, Ms. Broxton's reputation has been permanently impaired.

86.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future injuries resulting from Wesleyan's violations of 42 U.S.C. § 1981.

87.

Wesleyan has acted with malice or reckless indifference to the rights of Ms. Broxton that are protected by 42 U.S.C. § 1981.

88.

Punitive damages should be assessed against Wesleyan to punish it for its conduct and to deter others from engaging in similar conduct.

## C. Attorney's Fee Under 42 U.S.C. § 1988

89.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-88 above.

90.

This is an action to enforce a provision of 42 U.S.C. § 1981 and Ms. Broxton will be the prevailing party.

91.

Ms. Broxton is entitled to a reasonable attorney's fee as part of the costs of this action under 42 U.S.C. § 1988(b).

## D. Libel

92.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-91 above.

## The June 4, 2020 Statement

93.

On June 4, 2020, Wesleyan published on its social media (Facebook, Twitter, and Instagram) the following statement (the "June 4, 2020 Statement):

> Today Wesleyan administrators learned of racist statements and photos posted on a Wesleyan student's social media. Those posts are abhorrent to us and a gross violation of Wesleyan's mission and values. Such views have no place on our campus or within our community and we will act decisively when confronted by them. As soon as we were made aware of this information, we launched an investigation that led to the expulsion of the student, effective immediately. Wesleyan will not tolerate racist behavior in any form.

94.

The June 4, 2020 Statement referred to an ascertained or ascertainable person, and that person is Ms. Broxton. Persons who know and are acquainted with Ms. Broxton understand from viewing the publication that the statement refers to Ms. Broxton.

95.

Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media was an unprivileged communication to third parties of false and defamatory statements about Ms. Broxton.

96.

Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media constitutes libel.

97.

Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media was injurious on its face.    Special damages need not be proved because damage is inferred.

98.

Ms. Broxton has been injured, and she will suffer injuries in the future, because of the Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media.  Ms. Broxton has suffered monetary losses and will suffer monetary losses in the future.   She has experienced, and will experience in the future, embarrassment, humiliation, mental anguish, and emotional distress.  Also, Ms. Broxton's reputation has been permanently impaired.

99.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future

injuries resulting from Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media.

100.

Wesleyan acted with that entire want of care that raises the presumption of conscious indifference to the consequences when it published on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media.

101.

Ms. Broxton is entitled to an award of punitive damages against Wesleyan not as compensation to Ms. Broxton but solely to punish, penalize, or deter Wesleyan for Wesleyan's publication on its social media of that part of the June 4 Statement that Ms. Broxton had posted racist statements and photos on her social media.

**The July 28, 2020 Statement**

102.

On July 21, 2020, Ms. Broxton requested Wesleyan to retract that part of the June 4, 2020 Statement that Ms. Broxton had posted racist statements and photos on her social media.

103.

Wesleyan did not retract the June 4, 2020 Statement.  Rather, on July 28,

2020, Wesleyan published on its social media (Facebook, Twitter, and Instagram)

that it retracted its previous statement that Ms. Broxton had posted racist content to

her social media *in early June* (the "July 28, 2020 Statement").[7]

> On June 4, Wesleyan issued a statement that it had expelled a student
> for allegedly posting racist content to her social media.  Today we
> retract and repudiate the statement that this student posted racial
> content to her social media *in early June*.  The student exercised her
> right to appeal the expulsion, and her appeal was carefully considered
> by our Student-Faculty Judicial Board.  On July 3, the board ruled in
> the student's favor, overturning the expulsion effective immediately.
> In connection with the student's appeal, we received new information
> showing that the student did not post the racist content *in early June*.
> We will ensure that she transitions seamlessly back into campus life
> when the fall semester begins.  She has our full support.  (Emphasis
> added).

104.

The July 28, 2020 Statement referred to an ascertained or ascertainable

person, and that person is Ms. Broxton.  Persons who know and are acquainted

with Ms. Broxton understand from viewing the July 28, 2020 Statement that it

refers to Ms. Broxton.

---

[7] Before the July 28, 2020 Statement, Wesleyan had not published that Ms.
Broxton had posted racist content to her social media *in early June*.

105.

The July 28, 2020 Statement clearly implies that, while Ms. Broxton had not posted racist content to her social media in early June, she had posted racist content to her social media *at some other time*.

106.

Wesleyan's publication on its social media of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June was an unprivileged communication to third parties of a false and defamatory statement about Ms. Broxton.

107.

Wesleyan's publication of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June constitutes libel.

108.

Wesleyan's publication of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June was injurious on its face.   Special damages need not be proved because damage is inferred.

109.

Ms. Broxton has been injured and will be injured in the future because of Wesleyan's publication of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June.  Ms. Broxton has suffered monetary losses and will suffer monetary losses in the future.  She has experienced, and will experience in the future, embarrassment, humiliation, mental anguish, emotional distress.  Also, Ms. Broxton's reputation has been permanently impaired.

110.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future injuries resulting from Wesleyan's publication of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June.

111.

Wesleyan acted with that entire want of care that raises the presumption of conscious indifference to the consequences when it published that part of the July 28, 2020 Statement was that Ms. Broxton had posted racist content to her social media at some time other than early June.

112.

Ms. Broxton is entitled to an award of punitive damages against Wesleyan not as compensation to Ms. Broxton but solely to punish, penalize, or deter Wesleyan for its publication of that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June.

113.

Ms. Broxton requested Wesleyan to retract that part of the July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June.

114.

Wesleyan refused to retract that part of Wesleyan's July 28, 2020 Statement that Ms. Broxton had posted racist content to her social media at some time other than early June.

**The July 29, 2020 Statement**

115.

On July 29, 2020, Wesleyan published on its social media (Facebook, Twitter, and Instagram) a revision to its July 28, 2020 Statement ("the July 29, 2020 Statement"). In the July 29, 2020 Statement, Wesleyan stated that it retracted its statement that Ms. Broxton had posted racist content to her social media in early

June *while enrolled at Wesleyan* and that Wesleyan had received new information

showing Ms. Broxton did not post the racist content *while enrolled at Wesleyan*.[8]

> On June 4, Wesleyan issued a statement that it had expelled a student
> for allegedly posting racist content to her social media.  Today, we
> retract and repudiate the statement that this student posted racial
> content to her social media in early June *while enrolled at Wesleyan*.
> The student exercised her right to appeal the expulsion, and her appeal
> was carefully considered by our Student-Faculty Judicial Board.  On
> July *10*, the board ruled in the student's favor, overturning the
> expulsion effective immediately.  In connection with the student's
> appeal, we received new information showing that the student did not
> post the racist content *while enrolled at Wesleyan*.  We now have a
> responsibility to ensure she, and every Wesleyan student, transitions
> seamlessly back into campus life when the fall semester begins.  She
> has our full support. (Emphasis added).[9]

116.

The July 29, 2020 Statement referred to an ascertained or ascertainable

person, and that person is Ms. Broxton.  Persons who know and are acquainted

with Ms. Broxton understand from viewing the July 29, 2020 Statement that it

refers to Ms. Broxton.

---

[8] Again, Wesleyan had not published that Ms. Broxton had posted racist content to
her social media in early June *while a student at Wesleyan* before the July 29, 2020
Statement.

[9] The additions that Wesleyan made to Wesleyan's July 28, 2020 Statement are in
italics.

117.

The July 29, 2020 Statement clearly implies that, while Ms. Broxton had not posted racist content to her social media while enrolled at Wesleyan, she had posted racist content to her social media *while not enrolled at Wesleyan*.

118.

Wesleyan's publication on its social media of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan was an unprivileged communication to third parties of a false and defamatory statement about Ms. Broxton.

119.

Wesleyan's publication of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan constitutes libel.

120.

Wesleyan's publication of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan was injurious on its face.   Special damages need not be proved because damage is inferred.

121.

Ms. Broxton has been injured and will be injured in the future because of the Wesleyan's publication of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan. Ms. Broxton has suffered monetary losses and will suffer monetary losses in the future. She has experienced, and will experience in the future, embarrassment, humiliation, mental anguish, and emotional distress. Also, Ms. Broxton's reputation has been permanently impaired.

122.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future injuries resulting from Wesleyan's publication of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan.

123.

Wesleyan acted with that entire want of care that raises the presumption of conscious indifference to the consequences when it published that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan.

124.

Ms. Broxton is entitled to an award of punitive damages against Wesleyan not as compensation to Ms. Broxton but solely to punish, penalize, or deter Wesleyan for its publication of that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan.

125.

Ms. Broxton requested Wesleyan to retract that part of the July 29, 2020 Statement that Ms. Broxton had posted racist content to her social media while not enrolled at Wesleyan.

126.

Wesleyan refused to retract that that part of the July 29, 2020 Statement that Ms. Broxton had posted racist statements while not enrolled at Wesleyan.

**<u>Invasion of Privacy – Placing Ms. Broxton in a False Light</u>**

127.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-126 above.

128.

Wesleyan has published matters about Ms. Broxton that have placed her in a false light, Specifically,

(a)    On June 4, 2020 Wesleyan published on its social media (Facebook,

Twitter, and Instagram) that

- Ms. Broxton had posted racist statements and photos on her social media,

- Ms. Broxton had posted statements on her social media that were abhorrent to Wesleyan's mission and values, and

- Ms. Broxton had posted statements on her social media that have no place on Wesleyan's campus or within it community.

(b)    On July 28, 2020, Wesleyan published on its social media (Facebook,

Twitter, and Instagram) that

- while Ms. Broxton had not posted racist content to her social media in early June, she had posted racist content to her social media at some other time, and

- Wesleyan's Student-Faculty Judicial Board ruled in Ms. Broxton's favor and overturned Ms. Broxton's expulsion because Wesleyan had received new information showing that Ms. Broxton did not post the racist content in early June.

(c)    On July 29, 2020, Wesleyan published on its social media (Facebook,

Twitter, and Instagram) that

- while Ms. Broxton had not posted racist content to her social media while enrolled at Wesleyan, she had posted racist content to her social media while not enrolled at Wesleyan, and

- Wesleyan's Student-Faculty Judicial Board ruled in Ms. Broxton's favor and overturned Ms. Broxton's expulsion because Wesleyan had received new information showing that Ms. Broxton did not post the racist content in early June.

129.

Each matter published by Wesleyan that is described in paragraph 128 above is false.

130.

Ms. Broxton has been injured and will be injured in the future because Wesleyan has placed her in a false light by its June 4, 2020, July 28, 2020, and July 29, 2020 publication of the falsehoods about Ms. Broxton described in paragraph 128 above.  Ms. Broxton has suffered monetary losses and will suffer monetary losses in the future.  She has experienced, and will experience in the future, embarrassment, humiliation, mental anguish, and emotional distress.  Also, Ms. Broxton's reputation has been permanently impaired.

131.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future injuries resulting from Wesleyan placing Ms. Broxton in a false light by its June 4, 2020, July 28, 2020, and July 29, 2020 publication of falsehoods described in paragraph 128 above.

132.

Wesleyan's conduct in placing Ms. Broxton in a false light by its June 4, 2020, July 28, 2020, and July 29, 2020 publication of falsehoods described in

paragraph 128 above shows that entire want of care which raises the presumption of conscious indifference to consequences on the part of Wesleyan.

133.

Ms. Broxton is entitled to an award of punitive damages against Wesleyan not as compensation to Ms. Broxton but solely to punish, penalize, or deter Wesleyan for its placing Ms. Broxton in a false light by its June 4, 2020, July 28, 2020, and July 29, 2020 publication of falsehoods described in paragraph 128 above.

**F.  Invasion of Privacy – Disclosure of Private Facts About Ms. Broxton**

134.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-133 above.

135.

Ms. Broxton has the right to be free from the publication of her private affairs with which the public has no legitimate concern.

136.

As part of the June 4, 2020 Statement, Wesleyan published the following matter on its social media (Facebook, Twitter, and Instagram):

> As soon as we were made aware of this information, we launched an investigation that led to the expulsion of the student, effective immediately.

137.

As part of the July 28, 2020 Statement, Wesleyan published the following

matter on its social media (Facebook, Twitter, and Instagram):

> The student exercised her right to appeal the expulsion, and her appeal
> was carefully considered by our Student-Faculty Judicial Board.  On
> July 3, the board ruled in the student's favor, overturning the
> expulsion effective immediately.

138.

As part of the July 29, 2020 Statement, Wesleyan published the following

matter on its social media (Facebook, Twitter, and Instagram):

> The student exercised her right to appeal the expulsion, and her appeal
> was carefully considered by our Student-Faculty Judicial Board.  On
> July 10, the board ruled in the student's favor, overturning the
> expulsion effective immediately.

139.

The June 4, 2020 Statement, the July 28, 2020 Statement, and the July 29,

2020 Statement referred to an ascertained or ascertainable person, and that person

was Ms. Broxton.  Persons who knew and were acquainted with Ms. Broxton

understood from viewing the publications that the Statements referred to Ms.

Broxton.

140.

Wesleyan's disclosures that Ms. Broxton had been expelled from Wesleyan,

that Ms. Broxton exercised her right to appeal the expulsion, that Ms. Broxton's

appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned were public disclosures of Ms. Broxton's private affairs with which the public has no legitimate concern.

141.

The disclosure of the fact that Ms. Broxton had been expelled from Wesleyan, that Ms. Broxton had exercised her right to appeal the expulsion, that her appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned would be offensive and objectionable to a reasonable person of ordinary sensibilities under the circumstances.

142.

Damages are not an element of a claim for an invasion of privacy by disclosure of a private matter.  Damages are presumed to flow from the tortious act, and Ms. Broxton may be awarded damages without proof of any specific amount.

143.

Even so, Ms. Broxton has been injured and will be injured in the future because Wesleyan invaded Ms. Broxton's privacy by publicly disclosing that Ms. Broxton had been expelled from Wesleyan, that Ms. Broxton had exercised her

right to appeal the expulsion, that her appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned.  Ms. Broxton has suffered monetary losses and will be injured in the future.  She has experienced embarrassment, humiliation, mental anguish, and emotional distress.   Also, Ms. Broxton's reputation has been permanently impaired.

144.

Ms. Broxton is entitled to recover damages from Wesleyan in an amount that will fully and fairly compensate Ms. Broxton for her past, present, and future injuries resulting from Wesleyan invasion of Ms. Broxton's privacy by publicly disclosing that Ms. Broxton had been expelled from Wesleyan, that Ms. Broxton had exercised her right to appeal the expulsion, that her appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned.

145.

Wesleyan's conduct in invading Ms. Broxton's privacy by publicly disclosing that Ms. Broxton had been expelled from Wesleyan, that Ms. Broxton had exercised her right to appeal the expulsion, that her appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned showed that entire want of

care which raises the presumption of conscious indifference to consequences on the part of Wesleyan.

146.

Ms. Broxton is entitled to an award of punitive damages against Wesleyan for invading Ms. Broxton's privacy by publicly disclosing that Ms. Broxton had been expelled from Wesleyan, that Ms. Broxton had exercised her right to appeal the expulsion, that her appeal was considered by Wesleyan's Student-Faculty Judicial Board, that the Board ruled in Ms. Broxton's favor, and that Ms. Broxton's expulsion was overturned.   Ms. Broxton is entitled to an award of punitive damages against Wesleyan not as compensation to Ms. Broxton but solely to punish, penalize, or deter Wesleyan.

## **Expenses of Litigation**

147.

Ms. Broxton adopts and incorporates herein by reference each and every allegation made in Paragraphs 1-146 above.

148.

Wesleyan has acted in bad faith.

149.

Wesleyan has been stubbornly litigious.

150.

Wesleyan has caused Ms. Broxton unnecessary trouble and expense.

151.

Ms. Broxton's expenses of litigation, including attorneys' fees, should be allowed as part of the damages.

## **Demand for Jury Trial**

Ms. Broxton demands a trial by jury as to all issues so triable.

## **Prayer for Relief**

WHEREFORE Plaintiff Sydney Broxton prays for the following relief against Defendant Wesleyan College:

(a) The issuance and service of process as to Defendant Wesleyan College,

(b) The entry of a Judgment in favor of Plaintiff Ms. Broxton and against Defendant Wesleyan College in an amount that will

   i. so far as it is possible to do so by a monetary award, place Ms. Broxton in the position she would have been had Wesleyan fully performed its contract with Ms. Broxton,

   ii. fully and fairly compensate Ms. Broxton for the injuries she has and will sustain because of Wesleyan's violations of 42 U.S.C. § 1981,

   iii. punish Wesleyan for acting with malice or reckless indifference to the rights of Ms. Broxton that are protected by 42 U.S.C. § 1981 and deter others from engaging in similar conduct,

   iv. fully and fairly compensate Ms. Broxton for the injuries she has and will sustained because of Wesleyan's (A) publication of

libelous statements about Ms. Broxton, (B) invasion of Ms. Broxton's privacy by placing her in a false light, (C) invasion of Ms. Broxton's privacy by disclosing private facts about Ms. Broxton,

v. punish, penalize, or deter Wesleyan for acting with conscious indifference to the consequences when it (A) published the libelous statements about Ms. Broxton, (B) invaded Ms. Broxton's privacy by placing her in a false light, and (C) invaded Ms. Broxton's privacy by disclosing private facts about Ms. Broxton; and

vi. fully and fairly compensate Ms. Broxton for her expenses of litigation, including attorneys' fees,

(c) Taxation of costs against Defendant Wesleyan College including a reasonable attorney's fee that includes expert fees in accordance with 42 U.S.C. § 1981,

(d) Interest at the lawful rate, and

(e) Such other relief that this Honorable Court deems just and proper.

Date:  June 3, 2021.

*/s/Jerry A. Lumley*
JERRY A. LUMLEY
Georgia Bar No. 460866
Atttorney for Plaintiff
Sydney Broxton

Lumley & Harper, LLC
3405 Ridge Avenue
Macon, Georgia 31204
(478) 471-1776
jlumley@lumleyandharper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 3, 2021, I served the foregoing **Amended Complaint for Damages** upon all parties in this action by sending it to the following registered users of the court's electronic-filing system by filing it with the court's electronic-filing system: **Wayne S. Melnick** and **Taryn C. Haumann**.

Date: June 3, 2021.

> */s/Jerry A. Lumley*
> Jerry A. Lumley
> Georgia Bar No. 460866
> Attorney for Plaintiff

Lumley & Harper, LLC
3405 Ridge Avenue
Macon, Georgia 31204
(478) 471-1776
jlumley@lumleyandharper.com